[Cite as *In re Adoption of L.R.B.*, 2018-Ohio-1489.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: ADOPTION OF L.R.B.

C.A. No.     28678

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2016 AD 131

DECISION AND JOURNAL ENTRY

Dated: April 18, 2018

CALLAHAN, Judge.

{¶1}    Dustin Meier appeals from a judgment of the Summit County Common Pleas Court, Probate Division, determining that his consent was not necessary for the adoption of his biological child ("Child"). This Court affirms.

I.

{¶2}    Child was born to Mr. Meier ("Biological Father") and Larami Ball, fka Larami McLean, ("Mother") in California in 2005. Biological Father and Mother were never married, but Biological Father was listed on Child's birth certificate. According to a 2006 paternity test filed by Biological Father, "the probability of [his] paternity [of Child] is 99.99%."

{¶3}    Biological Father filed an action in California to establish his parentage. By entry dated May 8, 2006, the court found that Mother and Biological Father are the parents of Child. The court further incorporated into that entry the parents' stipulation and agreement concerning

child custody and visitation which specified that "[t]he parents shall share joint legal custody" of Child whose "[p]rimary [r]esidence shall be with [M]other."

{¶4} Mother subsequently married Christopher Ball ("Stepfather"). In 2008, the California court granted Mother permission to move to Ohio. Thereafter, Mother and Biological Father instituted multiple actions concerning Child. Biological Father commenced actions in Wayne County, Ohio and Macon County, Illinois. Mother commenced actions in Summit County, Ohio.

{¶5} A more complete history of Biological Father's and Mother's various actions can be found in *Ball v. Meier*, 9th Dist. Summit Nos. 26079, 26109, 2012-Ohio-5864, ¶ 2-4, and *Meier v. Ball*, Ill.App. 4th Dist. No. 4-13-0153, 2013 Ill. App. Unpub. LEXIS 1331, *2-12 (June 18, 2013). As it relates to the arguments raised by the parties in the current appeal, this Court previously "conclude[d] that Ohio ha[d] jurisdiction to modify the California orders." *Ball* at ¶ 11. The Illinois court, on the other hand, found it "was devoid of jurisdiction" and recognized this Court's determination "that Ohio – not Illinois – had jurisdiction." *Meier* at *16-17; *see Ball* at ¶ 12-13 (noting that parties could not by agreement confer jurisdiction upon an Illinois court).

{¶6} On September 12, 2016, Stepfather filed a petition to adopt Child in the Summit County Common Pleas Court, Probate Division. The petition alleged that Biological Father's consent was not required because he had "failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition * * *." The petition listed Biological Father's address as 4840 Forest Parkway, Decatur, Illinois 62521.

{¶7} Counsel for Stepfather filed an affidavit for service by publication. He averred that he had represented Mother in the various Ohio and Illinois court actions involving

Biological Father. He represented that the last address any of those courts had for Biological Father was 4840 Forest Parkway, Decatur, Illinois 62521, but mail had been returned in the most recent court action from that address. He continued that an internet search for Biological Father's address also referred to the Decatur, Illinois address. He further averred that neither he, Mother, nor Stepfather knew Biological Father's whereabouts or residence, and that Biological Father's address could not be ascertained with reasonable diligence. Upon review of the affidavit, the court ordered service of notice by publication. Proof of publication was filed with the court stating that the notice was published in the Akron Legal News on September 29, October 6, and October 13, 2016.

{¶8} On September 21, 2016, the court sent a "Notice of Consent Hearing" and a "Notice of Hearing on Petition for Adoption" to Biological Father at 4840 Forest Parkway, Decatur, Illinois 62521. The notices informed Biological Father that Stepfather had filed a petition to adopt Child and that a hearing was scheduled for October 27, 2016 to determine whether Biological Father's consent was necessary for the adoption. The notices further informed Biological Father that, to contest the adoption, he was required to file an objection "within fourteen days after proof of service of [the] notice[s]" and "[he] must also appear at the hearing." (Emphasis deleted.)

{¶9} The hearing went forward as scheduled before the magistrate. Biological Father did not appear at the hearing. Mother testified at the hearing. In addition, orders from the California court and the Summit County Common Pleas Court, Domestic Relations Division, were entered into evidence. That same day the magistrate issued a decision concluding that the consent of Biological Father was unnecessary for Stepfather to adopt Child.

{¶10} The magistrate's decision was sent to Biological Father at 4840 Forest Parkway, Decatur, Illinois. On November 10, 2016, Biological Father entered a limited appearance objecting to the court's exercise of subject matter and personal jurisdiction over him. He requested that "the following service address [be used] from this point forward: Dustin Eugene Johan Meier[,] 752 North Main Street, #421[,] Mansfield, Texas 76063.[1]" (Emphasis deleted.) Biological Father further requested leave to object stating that he became aware of the present action "via a telephone call" on November 4, 2016 informing him that he had received mail from a Summit County, Ohio court at the Decatur, Illinois address. The court granted Biological Father an extension of time to properly request a copy of its records, to have a transcript of the hearing prepared, and to file supplemental objections to the magistrate's decision.

{¶11} In his supplemental objections, Biological Father contended, inter alia, that California had exclusive subject matter jurisdiction, he had not been properly served the petition for adoption, and that his failure to provide more than de minimis contact with Child for a period of at least one year was justified. The court overruled Biological Father's objections. Biological Father appeals, raising four assignments of error.

{¶12} Prior to addressing Biological Father's assignments of error, this Court pauses to note that a probate court's determination that a parent's consent to an adoption is not required is a final appealable order. *See In re adoption of Greer*, 70 Ohio St.3d 293, 298 (1994). Therefore, this Court has jurisdiction to decide this appeal at this time.

---

[1] In his brief to this Court, Biological Father states that he "relocated to the Dallas/Fort Worth, Texas area" in November of 2014 and "secured a post office box in Mansfield, Texas."

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED BY EXERCISING CONCURRENT JURISDICTION WITH THE SUPERIOR COURT OF CALIFORNIA, SAN DIEGO, CALIFORNIA, EAST COUNTY FAMILY LAW DIVISION WHILE THE PETITION TO ESTABLISH PARENTAGE REMAINS PENDING THERE, OFFENDING THE PURPOSE OF THE UNIFORM PARENTAGE ACT.

**{¶13}** In his first assignment of error, Biological Father argues that Ohio courts lack jurisdiction to take any action regarding Child while his action remained pending in California.

**{¶14}** Initially, this Court notes that Biological Father attempts to use this assignment of error to challenge "all Ohio actions." This Court's jurisdiction is limited to the order appealed from in this case; it does not extend to reviewing orders from other cases. *See State v. Mason*, 9th Dist. Summit No. 27715, 2016-Ohio-7081, ¶ 11-15. The current appeal is from the Summit County Court of Common Pleas, Probate Division. No other Ohio actions are before this Court in this appeal.

**{¶15}** Similarly, Stepfather argues that, because this Court concluded that Ohio had jurisdiction in *Ball*, 2012-Ohio-5864, Biological Father is barred by the law-of-the-case doctrine from challenging jurisdiction in the current case. The law-of-the-case doctrine, however, does not require a court to follow a superior court's decision in a prior appeal involving one of the parties in the context of a different case. *Reid v. Cleveland Police Dept.*, 151 Ohio St.3d 243, 2017-Ohio-7527, ¶ 1. In *Ball*, Biological Father appealed from a judgment of the Summit County Common Pleas Court, Domestic Relations Division, and this Court addressed "the subject matter jurisdiction of Ohio courts to resolve custody disputes pertaining to [Child]." 2012-Ohio-5864, at ¶ 1, 6. Although Biological Father was a party to both actions, the law of the case in the domestic

relations action does not bar his current arguments concerning the jurisdiction of the probate court.

{¶16} Turning to the merits of the jurisdictional issue, "[t]here is a distinction between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises that subject-matter jurisdiction once conferred upon it." *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 10. *Accord Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 18-19. Subject-matter jurisdiction concerns the power of a court to "adjudicate a particular class of cases." *Kuchta* at ¶ 19. When a court has subject-matter jurisdiction over a particular class of cases, but lacks the authority to exercise it in a particular case, its action is voidable. *Id.*, citing *Pratts* at ¶ 12.

{¶17} "It is well established that the original and exclusive jurisdiction over adoption proceedings is vested in the probate court." *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, ¶ 9. In the present matter, Stepfather brought a petition to adopt Child, which is a matter within the probate court's "original and exclusive jurisdiction." *See id.* Hence, Biological Father's challenge concerns not subject-matter jurisdiction itself, but the exercise of that jurisdiction in this particular case.

{¶18} In *Pushcar*, the Ohio Supreme Court held that, despite having subject-matter jurisdiction, a probate court must refrain from proceeding on an adoption petition when the parentage of that child is pending in another court. *Id.* at ¶ 9-10. But, the Court also reaffirmed that "'[a] [p]robate [c]ourt has jurisdiction to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of [another] court.'" *Id.* at ¶ 9, quoting *In re Adoption of Biddle*, 168 Ohio St. 209 (1958), paragraph two of the syllabus.

{¶19} Consequently, the central issue is whether the pending action in California involved paternity or custody. Biological Father phrases much of his argument in terms of the "parentage action" that he asserts "remains pending" in California. Yet, in the fact section of his brief, he characterized the California, Wayne County, and Summit County actions as "simultaneous custody proceedings." Regardless of the phrasing chosen by Biological Father, this Court must examine the substance of the matters decided and the matters alleged to be pending in California.

{¶20} At the magistrate's hearing, a number of certified entries from the California court were entered into evidence. These included a May 8, 2006 judgment entry wherein it states: "THE COURT FINDS Larami McLean [and] Dustin Meier are the parents of [Child]." (Emphasis sic.) Biological Father attached a copy of this same entry to his supplemental objections. Biological Father also included a number of other items from the California court. He did not provide any evidence that the 2006 paternity finding was ever vacated, or even challenged.

{¶21} The only entry that Biological Father claims was vacated by the California court was a July 21, 2008 entry regarding Mother's relocation to Ohio. Biological Father challenges whether Child's "primary residence" was to be with Mother or Biological Father when Mother moved to Ohio. The items that Biological Father contends are pending pertain to custody, visitation, and contempt. Those items do not relate to paternity and, therefore, do not affect the probate court's exercise of its jurisdiction. The facts in the present case are unlike those in *Pushcar* wherein a juvenile court was awaiting genetic testing to establish paternity when the adoption petition was filed in probate court. 110 Ohio St.3d 332, 2006-Ohio-4572, at ¶ 4, 14.

{¶22} In his reply brief, Biological Father contends that the May 8, 2006 entry could not be relied upon because it states that it was "'pending further order of court on a temporary basis'" and that "'[t]his visitation and custody schedule shall be incorporated into any judgment of paternity.'" Biological Father cannot use his reply brief to raise new issues. *See Schmitt v. Ward*, 9th Dist. Summit No. 28324, 2017-Ohio-4171, ¶ 8. Moreover, Biological Father takes these quotes out of context and, in so doing, distorts their meaning. The May 8, 2006 entry consists of two pages and a four page attachment. The court's finding of paternity appears on the first page of the entry. The quotes referenced by Biological Father are contained in the attachment, which concerns "CHILD CUSTODY AND VISITATION." (Emphasis sic.) The attachment begins by stating, "The parties made the following stipulations in open court on 4/25/2006." The court incorporated the April 25, 2006 stipulations regarding custody and visitation into its May 8, 2006 judgment of paternity by referencing and attaching it thereto. As to what remained "pending further order," the complete quote states: "The parties agree the court order for custody and visitation of [Child] shall be as follows, pending further order of the court on a temporary basis." Thus, what remained "pending" was not paternity, but custody and visitation.

{¶23} Biological Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY ACCEPTING THE STATEMENTS OF [ ] COUNSEL FOR [STEPFATHER] AS "TESTIMONY" FOR THE PURPOSE OF EVIDENCE OVER THE OBJECTIONS OF [BIOLOGICAL FATHER].

{¶24} In his second assignment of error, Biological Father contends that "the trial court relied solely on [Stepfather's] counsel's unsworn testimony re[garding] establishment of paternity to determine its continued exercise of subject matter jurisdiction." This assertion is not

supported by the record, which also contains certified copies of the California court's May 8, 2006 entry establishing paternity. Biological Father's second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED BY DENYING [BIOLOGICAL FATHER] DUE PROCESS OF LAW, WHEREIN THE TRIAL COURT FAILED TO ENSURE THAT [STEPFATHER] SERVED ACTUAL[2] NOTICE ON [BIOLOGICAL FATHER] PRIOR TO EXERCISING JURISDICTION.

**{¶25}** In his third assignment of error, Biological Father argues that he was not served in accordance with the Ohio Rules of Civil Procedure, and more particularly, Civ.R. 4 to 4.6 and Civ.R. 73.

**{¶26}** Preliminarily, this Court notes that Civ.R. 4 to 4.6 apply to some, but not all, proceedings in the probate division of a common pleas court. "Civ.R. 4 through 4.6 shall apply in any proceeding in the probate division of the court of common pleas requiring service of summons." Civ.R. 73(C). But, "[i]n any proceeding where any type of notice other than summons is required[,]" notice shall be given in accordance with Civ.R. 73(E).

**{¶27}** When a petition for adoption is filed, the probate court is required to provide "*notice* of the filing of the petition and of the time and place of [the] hearing * * * to * * * [a] person whose consent is not required as provided in division (A) * * * of section 3107.07 of the Revised Code and has not consented." (Emphasis added.) R.C. 3107.11(A)(2). Thus, R.C. 3107.11 "requires service of notice rather than issuance of summons." *Askew v. Taylor*, 5th Dist. Stark No. 2004CA00184, 2004-Ohio-5504, ¶ 18, citing *In re Burdette*, 83 Ohio App. 368, 374 (9th Dist.1948). Consequently, Biological Father's reliance on Civ.R. 4 to 4.6 governing service of summons is misplaced.

---

[2] Although Biological Father claims in his stated assignment of error that he was entitled to "actual notice," within the body of his argument he clarifies that the issue is "actual attempts that are reasonably calculated to provide actual notice."

**{¶28}** Civ.R. 73(E) lists seven methods by which notice of a probate proceeding may be served. These include personal delivery, leaving a copy at the person's residence, certified or express mail return receipt requested, commercial carrier service, ordinary mail, publication, or "other method as the court may direct." Civ.R. 73(E)(1)-(7). The rule permits service of notice by any of the listed methods. *See* Civ.R. 73(E).

**{¶29}** According to Biological Father, "the only means of attempted service in this present action was service by publication." This assertion ignores the "Notice of Consent Hearing" and "Notice of Hearing on Petition for Adoption" that the court sent to Biological Father at 4840 Forest Parkway, Decatur, Illinois 62521.[3] Biological Father does not argue that these notices were insufficient for service under Civ.R. 73(E). "An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and legal authority." *State v. Watson*, 9th Dist. Summit No. 24232, 2009-Ohio-330, ¶ 5, citing App.R. 16(A)(7). "This Court will not create an argument on the behalf of an appellant." *Id.*, citing *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349, 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998).

**{¶30}** Because the record reflects that service by publication was not the only method used to provide the required notice, and Biological Father fails to argue that the other method used by the court was insufficient, his third assignment of error is overruled.

---

[3] The court used this same address when sending the magistrate's decision, which Biological Father states he "clearly received." Additionally, in his reply brief, Biological Father states that he "maintains a *residence* in Decatur, Illinois" although his current "*domicile*" is Texas. (Emphasis sic.).

## ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN FINDING CONSENT OF [BIOLOGICAL FATHER] IS NOT REQUIRED WHEN [STEPFATHER] FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT: (1) [BIOLOGICAL FATHER] WAS NOT JUSTIFIED IN FAILING TO COMMUNICATE WITH [ ] CHILD; AND (2) THAT SUCH FAILURE OCCURRED BOTH: (A) 12 MONTHS PRIOR TO SEPTEMBER 12, 2016, AND (B) AFTER PATERNITY WAS ESTABLISHED.

{¶31} In his fourth assignment of error, Biological Father argues that the trial court erred in finding that his consent was not required for the adoption of Child.

{¶32} Under R.C. 3107.07(A), "[c]onsent to adoption is not required of * * * [a] parent of a minor, when * * * the court * * * finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition."

{¶33} In the present matter, the adoption petition was filed on September 12, 2016, and Biological Father concedes that he "has not seen or talked to [C]hild since about June 2013." Nonetheless, he argues that (1) a consent finding could not be made because his parentage action remained pending in California and (2) Stepfather failed to prove that Biological Father acted without justifiable cause.

{¶34} In support of his argument that a consent finding could not be made until further action was taken by the California court, Biological Father references his first assignment of error and *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572. In *Pushcar*, the Ohio Supreme Court found that "[t]he requisite one-year period set forth in [R.C. 3107.07(A)] could not begin to run until a judicial ascertainment of paternity." *Id.* at ¶ 14. As stated under the first assignment of error, Biological Father's paternity of Child was established by the California court in 2006.

Thus, the judicial determination of paternity was well before the one-year look back period from the filing of the adoption petition.

**{¶35}** Biological Father further contends that Stepfather failed "to prove by clear and convincing evidence that [Biological Father] lacked justification for his absence from [C]hild's life." This Court has previously addressed the parties' respective burdens under R.C. 3107.07(A). "The burden of proving, clearly and convincingly, that a parent has failed to communicate with a child for the requisite one-year period and that such failure was without justifiable cause rests with the petitioner." *In re Kr. E.*, 9th Dist. Lorain No. 06CA008891, 2006-Ohio-4815, ¶ 11, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985), paragraph four of the syllabus. But, "[o]nce the petitioner has established that the parent has failed to communicate with the child for the one-year period, the burden of going forward to show some facially justifiable cause for the failure shifts to the parent." *In re Kr. E.* at ¶ 11, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102 (1987), paragraph two of the syllabus. "[T]he burden of proof remains with the petitioner." *Id.*

**{¶36}** As explained by the Ohio Supreme Court, "a natural parent may not simply remain mute" and force an adopting parent to demonstrate why the natural parent's failure was unjustified. *In re Adoption of Bovett* at 104. "[T]he adopting parent has no legal duty to prove a negative." (Emphasis sic.) *Id.,* quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 167 (1986). Thus, once a petitioner meets his initial burden, "the *burden of going forward with the evidence* is on the natural parent" although "[t]he *burden of proof* [ ] remains with the petitioner." (Emphasis sic.) *In re Adoption of Bovett* at 104.

**{¶37}** In the present matter, Mother testified that the domestic relations court granted Biological Father supervised visitation with Child in June 2013. She further testified that

Biological Father had no contact with Child since that time. She indicated that she had been in contact with the visitation center to provide necessary paperwork, including her address and phone number, but she had not been contacted by the visitation center to schedule a visit. She continued that, since June of 2013, Biological Father had not contacted her by phone or email, nor had he attempted to contact Child or sent him any cards or gifts. Although she testified that she had moved once, she continued that her phone number remained the same. Thus, Stepfather met his initial burden to prove with clear and convincing evidence that Biological Father had failed to have more than de minimis contact with Child during the relevant one-year period.

{¶38} The "*burden of going forward with the evidence*" demonstrating justifiable cause for the lack of contact, thus, shifted to Biological Father. (Emphasis sic.) *See In re Adoption of Bovett* at 104; *see also In re Kr. E.* at ¶ 11. Biological Father did not appear at the magistrate's hearing to present any evidence. Nonetheless, the trial court permitted him to introduce evidence along with his supplemental objections to the magistrate's decision.[4] Biological Father's supplemental objections contain a number of bald assertions alleging generally that Mother interfered with his ability to contact Child. He did not, however, provide any evidence to support any alleged interference during the relevant one-year period. Because Biological Father did not provide any evidence regarding his alleged justification, Stepfather's only obligation was to prove the lack of contact. *See In re Adoption of Bovett* at 104, quoting *In re Adoption of Masa* at 167.

{¶39} Biological Father's fourth assignment of error is overruled.

---

[4] On appeal, the parties do not address the propriety of the trial court's action in this regard, and this Court expresses no opinion regarding it.

III.

{¶40} Biological Father's assignments of error are overruled. The judgment of the Summit County Common Pleas Court, Probate Division, is affirmed.

Judgment affirmed.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DUSTIN E.J. MEIER, pro se, Appellant.

JOHN M. DOHNER, Attorney at Law, for Appellee.